## LEMUEL WITHINGTON *vs.* JOHN WARREN.

In an action on a promissory note given by the defendant for a sum awarded by three arbitrators, to be paid by him to the plaintiff, the defendant cannot defend by showing that one of the arbitrators, upon the statement of the chairman, who drew up the award, that it was right, signed it without reading it or knowing its contents, and that it was for a larger sum than was agreed upon by the arbitrators, unless he also shows that the said arbitrator was induced by some false representation, fraud or misconduct to sign a different award from that which he intended.

THIS case came before the court on exceptions taken by the defendant to the rulings of *Washburn,* J. before whom it was tried in the court of common pleas.

*Hallett,* for the defendant.

*J. J. Clarke,* for the plaintiff.

SHAW, C. J. This was an action of assumpsit on a promissory note given by the defendant to the plaintiff. The defendant gave notice of two grounds of defence: 1st, that the note was not given on a good consideration; 2d, an account in set-off.

It appeared in the progress of the trial, that the note was given for the amount of an award of Robert Vose, Stephen Wales and Aaron Nixon, arbitrators, to whom all demands between the parties had been submitted.

After proof of the note, the defendant did not offer to im-

peach the award, by way of showing want of consideration, but proceeded to prove his account in offset, to which the plaintiff objected, on the ground that it was barred by the award. The defendant then proposed to prove that the award was signed by Nixon, one of the arbitrators under a mistake, and thus to set it aside and avoid it.

To maintain this ground, the defendant proposed to call Nixon, one of the arbitrators, to testify that the award was signed by him under a mistake of this kind, namely, that after hearing the parties, the arbitrators, at a conference, agreed upon the principles of an award, and left the papers with Vose, the chairman, to draw it up accordingly; that, amongst other items, they had agreed to charge the defendant with five years' rent at $60 a year; that in fact it was so drawn as to charge the defendant with ten years' rent, charging him $75 for the rent of one of the years, thus making a difference of more than $300, which would have changed the balance; that in fact this arbitrator signed the award without reading it. The court directed that the inquiry must be limited to the question, whether the arbitrator was induced by any false representation, fraud or misconduct, to sign a different award from that which he intended to sign; to which the defendant excepted. The said arbitrator was then called, and testified that, after the arbitrators had agreed upon the principles of their award, the papers were left with the chairman, to draw up the award; that on the next day, the chairman brought it to him to sign; that he looked at it, but never read it; that he tried to read it, and began; but that it was long, and he asked the chairman if it was right, and he said it was; that he supposed it was right, and the chairman said he supposed it was right; that when the witness signed it, he did not know its contents. The witness was then asked, whether he would have signed it if he had known its contents. This question being objected to, the judge ruled that it was not competent, and it was not answered. To this the defendant excepted, but stated that he should not insist that any false representation, fraud or misconduct was made use of, to induce Nixon, the referee, to

sign the award. This exhibits the substance of the defend-ant's exceptions.

In consequence of some question at the bar, in relation to a matter of fact, if the case should be reserved, the judge put a special inquiry to the jury, and requested them to find whether Nixon did sign the award in consequence of statements made to him by Vose at the time of signing it, whereby he was led to sign it without reading it, or understanding its contents. To this the jury answered, in addition to a general verdict for the plaintiff, that " we think he did so sign it, in consequence of what was said to him by Mr. Vose."

The court are of opinion that the verdict cannot be affected by any of these grounds of exception. The first is, that the witness was not permitted to answer, whether he would have signed the award if he had known its contents. This is only another mode of asking, whether the award, as drawn up and signed, was conformable to the principles agreed to by the arbitrators, or, in other words, whether the award, as it now appears, is not different, in regard to certain debits or credits, from that which was previously agreed upon by the arbitrators, at their conference. It appears to us that this would be inadmissible, on many grounds. The award was not only signed by all the three arbitrators, one of whom has since deceased, but there were several schedules annexed to it, for the purpose of illustrating and explaining the items in detail, which were also signed by the three. The most the witness could say in favor of the defendant was, that accord-ing to his present recollection, he understood the agreement of the arbitrators, at their conference, to charge a certain rent for five years, when by his formal and solemn act, done at the time, in concurrence with the other arbitrators, in a form bind-ing upon the rights of the parties, he has declared that they agreed to allow rent for ten years. He could not be received thus, by his parol testimony, to contradict his formal award in writing.

Besides ; this is not such a mistake as would avoid an award. It would go to show, not that the arbitrators together,

as a body, had been misled, by the use of any false token, or measure, or table of computations, or the like, to make an award, which was not the result of their judgment upon the facts found by them, as in *Boston Water Power Company* v. *Gray*, 6 Met. 131, 169. It would simply tend to show that one of the arbitrators misunderstood the other two, or they him, in reference to the supposed item. It would be hazardous in the extreme to admit such an alleged mistake, long after an award is made and acted upon, to impeach its validity.

Then it is urged as an objection, that Nixon signed the award without reading it. But it was offered to him to read; he read some of it — as much as he thought fit to read — and had opportunity to read the whole; and by his signature adopted it. Would such an objection lie, in the absence of all fraud and imposition, to a deed or a bond, or any other instrument of a solemn character, to which a man places his signature? We think not. Then the only remaining question is, whether it makes any difference that he did so sign it, without reading it, as specially found by the jury, in consequence of what was said to him by Vose.

We have some doubts whether a question can thus be raised in this court on a bill of exceptions, by putting particular questions to the jury in the court below with a view to their finding facts specially, not for the purpose of affecting the issue tried, or the verdict then taken, but for the future consideration of another court; and whether such a finding is a part of the record, having the force and effect of a verdict. No objection to such course was made in this case, and this suggestion is now made only to avoid the conclusion that it is a regular and settled practice, and to treat it as an open question, to be considered when it arises.

That which was said to Nixon by Vose was, that he supposed it was right. The meaning of this declaration of Vose, taking it in connexion with the subject to which it applied, was, that it was conformable to the principles previously agreed on by the three arbitrators. Now we are not to assume that the three had agreed on a different result from that

expressed in the award; because, if it were so, it must have been known by Vose, and then his declaration that it was right and conformable to their agreement would have been a false representation, which is expressly disclaimed by the defendant. Besides; there is not the slightest evidence that the three arbitrators had so agreed. On the contrary, the evidence is the other way. Vose then stated that it was correct, that is, conformable to their understanding; and the deceased referee, by his signature to the award, in effect states the same thing. The question then resolves itself into this, whether, if one signs an award upon the assurance of another that he supposes or believes it to be correct, and it is not shown that such statement is false or erroneous, or not conformable to the fact, it can affect the validity of the award. It does not seem to vary in principle from the mode of affirming a verdict by a jury, which is so familiar a practice in courts. When the jury have agreed to allow and disallow certain items, and strike the balance, or to allow interest on a note, and the foreman, or some one of the jury, makes the necessary computations, and states to them that they are right, the sum is usually inserted accordingly in the verdict, and the verdict is affirmed by them on the faith of such assurance. If a party may ever execute an instrument without reading it, and make it his, and give it effect as his by adopting it, it cannot impair that effect, to show that he was induced to do so by the assurance of one well acquainted with the facts that it was right and correct; such assurance not being proved to be false or erroneous, but as far as the evidence goes proved to be true.

The result of the opinion of the court is, that the mistake proposed to be proved was not of such a nature that it could avoid and vacate the award, and that the evidence offered and relied upon to prove it was inadmissible.

*Exceptions overruled.*